# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RODNEY A. WILLS,<br><br>    Petitioner,<br><br>    v.<br><br>KAMALA D. HARRIS, et al.,<br><br>    Respondents. | No. 2:15-CV-01515-DMC-P<br><br>MEMORANDUM OPINION AND ORDER |

        Petitioner, a state prisoner proceeding pro se, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Pursuant to the written consent of all parties (Docs. 5 and 12), this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. See 28 U.S.C. § 636(c). Pending before the court are petitioner's first amended petition for a writ of habeas corpus (Doc. 6) and respondent's answer (Doc. 16). Petitioner did not file a traverse.

///
///
///
///
///
///

1

# I. BACKGROUND

**A.     <u>Facts</u>**[1]

The California Court of Appeal, Third District, recited the following facts, and Petitioner has not offered any clear and convincing evidence to rebut the presumption that these facts are correct:

*The People's Case*

*Tristen Doe*
On December 14, 2011, 16–year–old Tristen Doe was walking home from the bus stop after getting out of school at around 2:13 p.m. Defendant drove up very close to her in a green Honda. He stopped, rolled down the window, and asked Tristen if she wanted to get in the car. She declined and kept walking. Defendant revved the engine, moved the car forward, and told Tristen to "get in the fucking car."

Defendant looked as if he were about to open the car door when Tristen's next door neighbor, Cynthia Pendergast, brought her trash can out to the curb. Tristen saw Pendergast and called out her name. Defendant told Tristen, "Don't call her over here, bitch." Tristen told Pendergast, "Can you come over here, please?" When Pendergast looked at Tristen and came toward them, defendant told Tristen "man, fuck you" before driving away. Tristen wrote down the license plate number of defendant's car.

*Patrice Doe*
Between 2:00 and 3:00 p.m. that afternoon, 13–year–old Patrice Doe was walking when she saw a green Honda driven by defendant. Defendant asked Patrice her name, which she provided. Defendant asked Patrice where she lived, and she told him the north side. He asked whether she wanted to "kick it" at his apartment. Patrice declined, but defendant "forced" her to take a folded piece of paper containing his phone number. She did not want to go with him, but took his number because she was "scared" not to.

At some point, defendant grabbed Patrice's arm and tried to get her in his car. She jerked away from his grasp, ripping her sweatshirt in the process. She started to run away, but fell for a moment. Patrice looked back and saw defendant looking at her before he got into his car and drove off. She then ran all the way to school, where she called her mother and told her a man tried to grab her.

///

---

[1] Pursuant to 28 U.S.C. § 2254(e)(1), ". . . a determination of a factual issue made by a State court shall be presumed to be correct." <u>See also</u> <u>Runningeagle v. Ryan</u>, 686 F.3d 759 n.1 (9th Cir. 2012). Petitioner bears the burden of rebutting this presumption by clear and convincing evidence. <u>See id.</u> These facts are, therefore, drawn from the state court's opinion(s), lodged in this court. Petitioner may also be referred to as "defendant."

*Keeva and Anjuanune Doe*
That same afternoon, 14–year–old ninth graders Keeva and Anjuanune Doe were walking after school. As they crossed the street, they noticed a man driving slowly in a green car. The car drove off, but returned from around the block and pulled up as if it were going to stop. The girls tried to ignore the man; he caught their attention by nodding his head and making hand gestures telling them to come to the car. The girls responded by throwing rocks at the car. The man drove off.

*Uncharged Misconduct Evidence*
On November 7, 2011, 12–year–old Amanda Doe was walking home from school when she noticed a man in a green car driving slowly and staring at her while saying something she could not understand. She shook her head and kept walking. The man drove around and back to her a second and then a third time, staring and gesturing at her.

Amanda ran home and told her older sister. The two drove around to look for the car. They saw a four-door green Honda, which Amanda thought was the car that followed her. She believed that the man standing next to the car was the man who followed her.

*Other Evidence*
On December 14, 2011, at around 3:00 p.m., Stockton Police Officer Loreen Gamboa responded to a report of a car approaching a young female. Officer Gamboa met Tristen, who was crying and hysterical. She spoke to Tristen and a neighbor.

Gamboa received a similar report at 5:17 p.m. the same day regarding a car that matched the description police had been given. She drove to the location and found the car and the driver (defendant) detained. When Gamboa asked another officer what was going on, defendant said, "Is this about the underage girls I was talking to? I didn't do anything. I left."

Gamboa later met Patrice, who was afraid and appeared to have been crying. Patrice identified defendant and his car in a field identification. Tristen was also brought to the identification and identified defendant as well as his car. Anjuanune went to the identification; she identified defendant's car but was not sure defendant was the man. Keeva went to the identification and also identified defendant's car but was uncertain about defendant.

Defendant was interviewed by the police. He confirmed owning a dark green Honda Accord. He said that on the day of the incidents, he was driving to pick up his check at around 3:30 p.m. when he saw someone walking and "hit her up." The girl said she was picking up her sisters and visiting her mother; defendant said he wanted to talk to her later and asked for her number. She did not have a phone but said defendant could give her his number. She also agreed to go to his house and "kick it." Defendant, who thought the girl was 18 or 19 years old, gave her his number. He denied grabbing her or getting out of the car.

///

///

3

> Asked to define "kicking it," defendant said it meant going to his house, watching television, getting to know each other, and "if it be something else, it'll be something else." "[S]omething else" meant sex; if a girl "feels" him like he "feel[s]" her, it will lead to sex. He admitted that regarding the girl he wanted to "kick it" with, he was hoping to have sex with her if she was of age. He did not know that any of the girls he contacted were underage and did not intend to force any of them to do anything.
>
> Defendant was carrying unopened condoms in his wallet when he was arrested.
>
> *The Defense*
> Defendant testified that he attended to errands on the morning of the incidents, returned to his Stockton home for a nap, and then left at 3:00 p.m. to pick up his check from work. He thought the first female he encountered was at least 18. He followed her in his car to see who she was and to talk to her. He drove up close to her and said hello. She ignored him, but he kept talking to her and finally drove off when she "call[ed] out to some lady."
>
> Defendant kept driving; at around 3:25 or 3:30 p.m., he saw Patrice. Thinking she was 18 or older, defendant drove up and said hello to her. When she walked to the passenger window of defendant's stopped car, defendant rolled down the window and conversed with Patrice, eventually asking her to "kick it" with him. Defendant asked for her phone number, but she did not have one, so he gave her his number which she accepted. He then drove to work. After leaving work and driving to various locations, at around 5:00 p.m., defendant met the two girls from the prior encounter. Defendant drove past them and said, "What's up, ladies?" He never stopped the car or waved the girls over. He did not see them throw any rocks. He testified that he understood the term "kicking it" to mean hanging out, watching movies, or going out to eat.

People v. Wills, No. C073028, 2014 WL 2880221 (Cal. Ct. App. June 24, 2014) (unpublished).

### B. **Procedural History**

A jury convicted Petitioner of two counts of attempted kidnapping and four counts of contacting a minor with the intent to commit a sex offense or kidnapping. Petitioner was sentenced to eight years eight months in state prison. Petitioner's conviction and sentence were affirmed by the California Court of Appeal, Third District, on June 25, 2014, and on April 15, 2015, the California Supreme Court summarily denied Petitioner's petition for review. Petitioner filed his initial federal habeas corpus petition on July 15, 2015. On July 22, 2015, this court dismissed Petitioner's petition with leave to amend. On August 10, 2015, Petitioner filed his first amended petition for a writ of habeas corpus.

## II. STANDARDS OF REVIEW

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), which applies to cases filed after its enactment. See Lindh v. Murphy, 521 U.S. 320, 326-27 (1997); Calderon v. United States Dist. Ct. (Beeler), 128 F.3d 1283, 1287 (9th Cir. 1997), cert. denied, 522 U.S. 1099 (1998). This action was filed after April 24, 1996, thus the provisions of AEDPA are presumptively applicable.

Where AEDPA is applicable, federal habeas relief under 28 U.S.C. § 2254(d) is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under § 2254(d)(1), federal habeas relief is available only where the state court's decision is "contrary to" or represents an "unreasonable application of" clearly established law. Under both standards, "clearly established law" means those holdings of the United States Supreme Court as of the time of the last reasoned state court decision. See Carey v. Musladin, 549 U.S. 70, 74 (2006) (citing Williams, 529 U.S. at 412). The holdings of the Supreme Court, not the holdings of lower federal courts, determine clearly established law. Plumlee v. Masto, 512 F.3d 1204, 1210 (9th Cir. 2008) (en banc). The Supreme Court precedent must "squarely address" an issue or establish a legal principle that "clearly extends" to a new context. See Moses v. Payne, 555 F.3d 742, 753-54 (9th Cir. 2009) (citing Wright v. Van Patten, 552 U.S. 120, 28 S. Ct. 743, 746 (2008)). For federal law to be clearly established, the Supreme Court must provide a "categorical answer" to the question before the state court. See id.; see also Carey, 549 U.S. at 76-77.

///

///

///

Circuit court precedent "may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably." Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (quoting Maxwell v. Roe, 606 F.3d 561, 567 (9th Cir. 2010)). However, circuit precedent may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." Marshall v. Rodgers, 133 S. Ct. 1446, 1450 (2013) (citing Parker v. Matthews, 132 S. Ct. 2148, 2155 (2012) (per curiam)). Nor may it be used to "determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct. Id. Further, where courts of appeals have diverged in their treatment of an issue, it cannot be said that there is "clearly established Federal law" governing that issue. Carey v. Musladin, 549 U.S. 70, 77 (2006).

A state court decision is "contrary to" Supreme Court precedent if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. Williams v. Taylor, 529 U.S. 362, 405 (2000) (O'Connor, J., concurring). In sum, a petitioner must demonstrate that Supreme Court precedent requires a contrary outcome because the state court applied the wrong legal rules.

Under the "unreasonable application" clause of § 2254(d)(1), a federal court may grant a writ of habeas corpus if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. Lockyer v. Andrade, 538 U.S. 63, 75 (2003); Williams, 529 U.S. at 413; Chia v. Chambra, 360 F3d 997, 1002 (9th Cir. 2004). In this regard, a federal court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams, 529 U.S. at 412. See also Schriro v. Landrigan, 550 U.S. 465, 473 (2007); Lockyer, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'"). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being

presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington v. Richter, 562 U.S. 86, 103 (2011)

The "unreasonable application of" standard also applies where the state court denies a claim without providing any reasoning whatsoever. See Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Delgado v. Lewis, 233 F.3d 976, 982 (9th Cir. 2000). Such decisions are considered adjudications on the merits and are, therefore, entitled to deference under the AEDPA. See Green v. Lambert, 288 F.3d 1081 1089 (9th Cir. 2002); Delgado, 233 F.3d at 982. The federal habeas court assumes that state court applied the correct law and analyzes whether the state court's summary denial was based on an objectively unreasonable application of that law. See Himes, 336 F.3d at 853; Delgado, 233 F.3d at 982.

### III. DISCUSSION

Petitioner alleges there is insufficient evidence to support his multiple convictions of attempted kidnapping and multiple convictions of contacting a minor with the intent to commit sexual offenses. Petitioner raises four arguments in his petition. First, Petitioner contends that Patricia Doe testified that Petitioner exited his vehicle and forced his phone number in her hand, whereas in her statement to the police, Patricia Doe stated that Petitioner was in his car during this encounter. Further, Petitioner asserts that during trial Patricia Doe recanted her statements about Petitioner grabbing her and trying to force her into his car. Second, Petitioner alleges that during trial Officer Gamboa stated that she "had the crime lab take picture of [Patricia Doe's] torn sweatpants at the knee." But then, during cross examination Petitioner's attorney established that "there was no mention to take any pictures of torn sweatpants or. . .giving a command to the crime lab to take any pictures." Third, Petitioner argues he could not have interacted with Keeva Doe and Ajuanune Doe when alleged because he was on the other side of town interacting with Tristen Doe. Fourth, Petitioner contends that Keeva Doe and Anjuanune Doe left at different times, thus corroborating one of his statements.

///

When a challenge is brought alleging insufficient evidence, federal habeas corpus relief is available if it is found that, upon the record of evidence adduced at trial, viewed in the light most favorable to the prosecution, no rational trier of fact could have found proof of guilt beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979).[2] Under Jackson, the court must review the entire record when the sufficiency of the evidence is challenged on habeas. See id. It is the province of the jury to "resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Id. "The question is not whether we are personally convinced beyond a reasonable doubt. It is whether rational jurors could reach the conclusion that these jurors reached." Roehler v. Borg, 945 F.2d 303, 306 (9th Cir. 1991); see also Herrera v. Collins, 506 U.S. 390, 401-02 (1993). The federal habeas court determines sufficiency of the evidence in the context of the substantive elements of the criminal offense, as defined by state law. See Jackson, 443 U.S. at 324 n.16.

The California Court of Appeal, Third Appellate District, rejected the sufficiency of the evidence arguments and affirmed Petitioners convictions. In doing so the California Court of Appeal applied the following legal rule:

> Under the state and federal constitutional due process clauses, "the test of whether evidence is sufficient to support a conviction is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational tier of fact could have found the essential elements of the crime beyond a reasonable doubt."
>
> People v. Wills, No. C073028, 2014 WL 2880221 (Cal. Ct. App. June 24, 2014) (unpublished).

///

///

///

---

[2] Even though Jackson was decided before AEDPA's effective date, this expression of the law is valid under AEDPA's standard of federal habeas corpus review. A state court decision denying relief in the face of a record establishing that no rational jury could have found proof of guilt beyond a reasonable doubt would be either contrary to or an unreasonable application of the law as outlined in Jackson. Cf. Bruce v. Terhune, 376 F.3d 950, 959 (9th Cir. 2004) (denying habeas relief on sufficiency of the evidence claim under AEDPA standard of review because a rational jury could make the finding at issue).

Because the state court applied the correct legal standard under Jackson, the analysis turns to whether the state court's decision involved an unreasonable application of the Jackson standard. See Lockyer, 538 U.S. at 75; Williams, 529 U.S. at 413; Chia, 360 F3d at 1002.

In determining whether the evidence was sufficient in this case, the California Court of Appeal held:

> Defendant contends there is insufficient evidence to support his convictions as to count 4 (unlawful contact with Tristen), count 3 (attempted kidnapping of Tristen), count 5 (unlawful contact with Anjuanune), and count 6 (unlawful contact with Keeva). We disagree.
>
> In determining the sufficiency of the evidence, our role is limited. Under the state and federal constitutional due process clauses, "the test of whether evidence is sufficient to support a conviction is 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' [Citations.]" (*People v. Holt* (1997) 15 Cal.4th 619, 667.)
>
> A. *Count 4*
> Section 288.3, subdivision (a) states: "Every person who contacts or communicates with a minor, or attempts to contact or communicate with a minor, who knows or reasonably should know that the person is a minor, with intent to commit an offense specified in Section 207, 209, 261, 264.1, 273a, 286, 288, 288a, 288.2, 289, 311.1, 311.2, 311.4 or 311.11 involving the minor shall be punished by imprisonment in the state prison for the term prescribed for an attempt to commit the intended offense."
>
> The jury found defendant intended to commit two offenses in count 4, kidnapping (§ 207, subd. (a)) and forcible rape (§ 261, subd. (a)(2)). Defendant claims there is insufficient evidence to support either finding. He argues that the evidence shows no more than an intent to have consensual sex with Tristen, and does not indicate he intended to have forced intercourse with her. He further asserts the evidence does not show an intent to kidnap Tristen because defendant did not touch Tristen, did not open the car door, get out of the car, or block her path, and his "verbal 'insistence' was unaccompanied by any aggressive physical act."
>
> Intent is "'rarely susceptible of direct proof'" and instead "'must usually be inferred from all the facts and circumstances disclosed by the evidence.' [Citations.]" (*People v. Falck* (1997) 52 Cal.App.4th 287, 299.) While there is no direct proof of intent, there is enough circumstantial evidence to infer the requisite intent. "An appellate court must accept logical inferences that the jury might have drawn from the circumstantial evidence. [Citation.]" (*People v. Maury* (2003) 30 Cal.4th 342, 396.) "Before the judgment of the trial court can be set aside for the insufficiency of the evidence, it must clearly appear that on no hypothesis whatever is there sufficient substantial evidence to support the verdict of the jury. [Citation.]" (*People v. Hicks* (1982) 128 Cal.App.3d 423, 429.)

9

Evidence of other charged or uncharged offenses is relevant to show intent or plan. (Evid.Code, § 1101, subd. (b).) Where, as here, all of the charged and uncharged acts followed a similar pattern, we can consider the evidence of all charged and uncharged acts as relevant to the intent as to each charged crime. (Cf. *People v. Jones* (2013) 57 Cal.4th 899, 925 [joinder of offenses not prejudicial to defendant where joined offenses shared a distinctive modus operandi, rendering the evidence of each crime cross admissible as to "intent, plan or identity"].)

Taken together, the evidence shows defendant wanted to have sex with these underage girls. The definition of "kicking it" defendant gave to the police indicated the hope of sexual relations with them. Defendant's intent to have intercourse with the girls is also supported by the unopened condoms he was carrying when he was arrested. The jury did not have to accept defendant's self-serving statements to the police and his testimony that he intended only consensual sex or a consensual meeting with the girls. Defendant's conduct towards Tristen and Patrice showed he intended to force the matter if the girls did not consent to his advances. Although defendant's demands to Tristen to get in his car were not accompanied by any physical acts, any doubts regarding his intent were resolved by his attempt to pull Patrice into his car shortly after the incident with Tristen. (See *People v. Nye* (1951) 38 Cal.2d 34, 37–38, disapproved on other grounds in *People v. Rincon–Pineda* (1975) 14 Cal.3d 864, 876 [evidence of intent to rape shown by defendant's attempt to rape another woman in similar circumstances].)

Rape is sexual intercourse with another person "against a person's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the person or another." (§ 261, subd. (a)(2).) "Every person who forcibly, or by any other means of instilling fear, steals or takes, or holds, detains, or arrests any person in this state, and carries the person into another country, state, or county, or into another part of the same county, is guilty of kidnapping." (§ 207, subd. (a).)

Defendant approached three sets of underage girls within a short time, demonstrated the desire to have sex with them, and manifested a willingness to force them into his car if necessary. Taken together, these facts support an inference that defendant intended to kidnap and rape Tristen if she did not willingly go with him. Substantial evidence supports defendant's conviction under section 288.3, subdivision (a) in count 4.

B. *Count 3*
Relying on the authorities cited in support of his claim regarding count 4, defendant claims there is insufficient evidence to support his conviction for attempted kidnapping of Tristen in count 3.
Section 21a provides that "[a]n attempt to commit a crime consists of two elements: a specific intent to commit the crime, and a direct but ineffectual act done toward its commission." As we previously discussed, there is substantial evidence that defendant harbored an intent to kidnap Tristen. Defendant's attempt to order her into his car when she did not want to do so constitutes a direct but ineffectual act done towards the intended kidnapping. Substantial evidence supports the conviction for attempted kidnapping in count 3.

///

10

> C. *Counts 5 and 6*
> Defendant also contends his convictions for unlawful contact with Anjuanune (count 5) and Keeva (count 6) must be reversed because there is insufficient evidence that he had an intent to commit kidnapping, or an intent to commit a lewd act on a 14– or 15–year–old. As previously noted, the evidence of all the charged and uncharged offenses shows a common intent to have sex with the girls defendant contacted and an intent to kidnap them if necessary to achieve that goal. His statement at his arrest, "Is this about the underage girls I was talking to? I didn't do anything. I left," indicates he knew the girls were underage. Since the evidence supports an inference defendant intended to have sex with the underage girls and would kidnap them if provided the opportunity, substantial evidence supports the convictions and special findings as to both counts.

Wills, 2014 WL 2880221 at *3-4.

The Court of Appeal engaged in a thorough and reasoned review of all relevant evidence, in the light most favorable to the prosecution, and determined that a rational trier of fact could find the essential elements of each crime beyond a reasonable doubt. This court agrees. Petitioner argues that the evidence does not support a conviction, but rather corroborates his statements. However, as the Court of Appeal properly explained a jury is not required to accept defendant's statements and arguments during trial. See Wills, 2014 WL 2880221 at *3. Petitioner's argument focusses on what *he* believes the evidence establishes, not, as Jackson requires, whether a rational juror could reach the same verdict as the jury did in this case. On this record, looking at the testimony of the alleged victims, the physical evidence, including the unopened condoms in Petitioner's pocket, a rational jury could conclude, as the jury in this case did, that Petitioner is guilty of the alleged offenses. Given the Court of Appeal's review of the evidence and application of the proper law, it cannot be said that the court's review was unreasonable or that there is insufficient evidence to support Petitioner's convictions. Thus, the California Court of Appeal's decision did not involve an unreasonable application of clearly established federal law.

///
///
///
///

11

## IV. CONCLUSION

Based on the foregoing, the court concludes that petitioner is not entitled to federal habeas corpus relief.

Pursuant to Rule 11(a) of the Federal Rules Governing Section 2254 Cases, the court has considered whether to issue a certificate of appealability. Before petitioner can appeal this decision, a certificate of appealability must issue. See 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b). Where the petition is denied on the merits, a certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The court must either issue a certificate of appealability indicating which issues satisfy the required showing or must state the reasons why such a certificate should not issue. See Fed. R. App. P. 22(b). Where the petition is dismissed on procedural grounds, a certificate of appealability "should issue if the prisoner can show: (1) 'that jurists of reason would find it debatable whether the district court was correct in its procedural ruling'; and (2) 'that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right.'" Morris v. Woodford, 229 F.3d 775, 780 (9th Cir. 2000) (quoting Slack v. McDaniel, 529 U.S. 473, 120 S.Ct. 1595, 1604 (2000)). For the reasons stated herein, the court finds that issuance of a certificate of appealability is not warranted in this case.

Accordingly, IT IS HEREBY ORDERED that:

1. Petitioner's amended petition for a writ of habeas corpus (Doc. 6) is denied;

2. The court declines to issue a certificate of appealability; and

3. The Clerk of the Court is directed to enter judgment and close this file.

Dated: September 20, 2018

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE